UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **Antoine Fair,**  *Plaintiff,*  v.  **Amsher Collection Services, Inc., Sequium Asset Solutions, LLC,** *and* **Charter Communications, Inc.,**  *Defendants.* | Case Number: _____  Ad Damnum: **$4,000 + Atty Fees & Costs**  **JURY TRIAL DEMANDED** |

**COMPLAINT AND JURY TRIAL DEMAND**

COMES NOW the Plaintiff, **Antoine Fair** ("**Mr. Fair**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **Amsher Collection Services, Inc.** ("**Amsher**"), **Sequium Asset Solutions, LLC** ("**Sequium**"), and **Charter Communications, Inc.** ("**Charter**") (collectively, the "**Defendants**"), stating as follows:

**PRELIMINARY STATEMENT**

1. This is an action brought by Mr. Fair against Amsher for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**") and the *Florida Consumer Collection Practices Act*, Section 559.55, Florida Statutes, *et seq.*

("**FCCPA**"), and against the Defendants for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**").

## JURISDICTION AND VENUE

2. Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, the FDCPA, 15 U.S.C. § 1692k(d), the FCCPA, Section 559.77(1), Florida Statutes, and 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction for Plaintiff's FCCPA claims pursuant to 28 U.S.C. § 1367.

4. The Defendants are subject to the provisions of the FCRA, the FDCPA, and/or the FCCPA, and to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Section 48.193, Florida Statutes.

5. Venue is proper in Middle District of Florida, pursuant to 28 U.S.C. §1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## PARTIES

### Mr. Fair

6. **Mr. Fair** is a natural person residing in Ruskin, Hillsborough County, Florida, and a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c), the FDCPA, 15 U.S.C. § 1692a(3), and the FCCPA, Section 559.55(8), Florida Statutes.

### Amsher

7. **Amsher** is an Alabama corporation with a primary business address of **4524 Southlake Parkway, Suite 15, Hoover, AL 35244.**

8. Amsher is registered to conduct business in the State of Florida, where its registered agent is **Corporation Service Company**, **1201 Hays Street, Tallahassee, FL 32301.**

### Sequium

9. **Sequium** is a Georgia limited liability company with a primary business address of **1130 Northchase Parkway SE, Suite 150, Marietta, GA 30067.**

10. Sequium is registered to conduct business in the State of Florida, where its registered agent is **Registered Agent Solutions, Inc., 155 Office Plaza Drive, Suite A, Tallahassee, FL 32301.**

11. Amsher and Sequium are *Debt Collectors* within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), and the FCCPA, Section 559.55(7), Florida Statutes, in that they use an instrumentality of commerce, including postal mail and the internet, interstate and within the state of Florida, for their businesses, the principal purposes of which are the collection of debts, and/or they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

12. Amsher and Sequium are registered with the Florida Office of Financial Regulation as *Consumer Collection Agencies* ("**CCAs**"), holding license numbers **CCA0900419** and **CCA9903906,** respectively.

13. As licensed CCAs, Amsher and Sequium know, or should know, the requirements of the FDCPA and the FCCPA.

### Charter

14. **Charter** is a Delaware corporation with a primary business address of **400 Atlantic Street, Stamford, CT 06901**.

15. Charter is registered to conduct business in the State of Florida, where its registered agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301**

## FACTUAL ALLEGATIONS

### The Debt

16. On or about February 12, 2019, Mr. Fair allegedly incurred a debt of approximately $971 (the "**Debt**") relating to cable television and/or internet services provided by Spectrum, an entity owned by Charter Communications ("**Charter**").

17. The alleged Debt arose from goods or services which were for family, personal, or household purposes, specifically cable television and/or home

internet services, and therefore meets the definitions of *Debt* under the FDCPA, 15 U.S.C. §1692a(5), and the FCCPA, Section 559.55(6), Florida Statutes.

18. Around April 30, 2020, Charter assigned or otherwise transferred the Debt to Amsher.

19. Shortly thereafter, Amsher began reporting the Debt monthly to the major **Consumer Credit Reporting Agencies** ("**CRAs**"), including Equifax. **SEE PLAINTIFF'S EXHIBIT A.**

20. Amsher also reported the Debt to Experian.

21. In September 2020, Mr. Fair disputed Amsher's reported information to Experian, stating he did not owe the Debt alleged.

22. Experian's automated systems initiated an *Automated Consumer Dispute Verification* Request ("**ACDV**") which was delivered to Amsher through a system known as e-OSCAR.

23. Amsher responded to the ACDV, certifying to Experian that its information was accurate and required no update, change, or modification. **SEE PLAINTIFF'S EXHIBIT B.**

24. Amsher did not update its reporting to indicate the Debt was disputed. *Id.*

25. The failure to update a report to indicate that a debt is disputed can, in and of itself, violate the FCRA. *See Saunders v. Branch Banking and Trust Co. of VA*, 526 F.3d 142 (4th Cir. 2008).

26. Further, if a data furnisher like Amsher decides to report disputed information as verified, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295 (11th Cir. 2016).

27. Zero evidence exists to support the conclusion that Amsher's reported data was true, *e.g.*, that the Debt was not disputed by the consumer, Mr. Fair. As such, Amsher could not have possibly obtained any, much less sufficient evidence, to support that its reports were accurate.

28. In its October 2020 report to Experian, Amsher updated the "date last reported" and other information with more current information, and thus engaged in new communications concerning the Debt.

29. To report an account as "disputed by consumer," a data furnisher like Amsher can ensure notice of dispute is included in its reporting simply by reporting a *compliance condition code* ("**CCC**"). For example, reporting a CCC of "XB" (shorthand for "consumer disputes account information") tells the CRAs to include notice of dispute in any reports sold containing the disputed data.

30. Despite knowledge that the Debt was disputed, Amsher failed to report any CCC which would indicate to Experian to include notice of dispute in reports sold concerning Mr. Fair.

31.     Amsher was obliged to disclose the fact that the Debt was disputed in all subsequent communications about the debt after notice of dispute. Amsher had no right to unilaterally nullify Mr. Fair's dispute. *See*, *e.g.*, *Semper v. JBC Legal Group*, 2005 WL 2172377 (W.D. Wash. Sept. 6, 2005); *Evans v. Portfolio Recovery Associates*, 889 F. 3d 337 (7th Cir 2018).

32.     Further, Amsher had no right to determine on its own whether Mr. Fair's dispute had merit. The FDCPA requires a debt collector to communicate a debt is disputed, and 1692e(8) does not require an individual's dispute be valid or even reasonable. Instead, the plaintiff must simply make clear that he or she disputes the Debt. *DeKoven v. Plaza Assocs.*, 599 F.3d 578, 582 (7th Cir. 2010) ("[A] consumer can dispute a debt for 'no reason at all ….'")

33.     The failure to properly report a disputed debt *as disputed* creates a concrete injury-in-fact because the failure to disclose this information affects credit scores, meaning Mr. Fair suffered "a real risk of financial harm caused by an inaccurate credit rating." *Evans*, Id.

34.     In December 2020, Mr. Fair made a second dispute, this time through Equifax.

35.     In response to Equifax's ACDV, Amsher did update its reporting to indicate the Debt was disputed. **SEE PLAINTIFF'S EXHIBIT C.**

36.     Thus, two different investigations by Amsher resulted in two different outcomes, despite the same information being disputed. A second

investigation contradicting the first investigation can be seen as evidence that the first investigation was not reasonable; see, e.g., *Ponder v. Ocwen Loan Serv., LLC*, 2018 WL 4474635 (N.D. Ga. July 30, 2018).

## Charter Places Debt with Two Agencies Concurrently

37. On information and belief, on or around January 3, 2021, Charter, despite having the Debt placed with Amsher for collection, also assigned the Debt for collection to Sequium, meaning it had now assigned the Debt to two different debt collectors, concurrently, due to systemic errors and flawed procedures.

38. The duplicate assignment of debt was not unique to Mr. Fair nor an isolated incident. Charter has placed a great number of consumer debts simultaneously with more than one debt collector, affecting placements of debts with other debt collection agencies beyond Amsher and Sequium, including Credit Management, Inc., CBE Group, IC Systems, and Enhanced Recovery Company.

39. On information and belief, Sequium has no procedures in place which even attempt to prevent duplicate placements. For example, Sequium does not ask its clients to certify that accounts being placed with it for collection are not also placed for collection with other agencies.

40. Sequium often performs "soft" or "account review" credit inquiries on consumers it is engaged in collection activity with. Such reports would show

that, often, the same Charter debt is being actively reported by different debt collection agencies.

41. In or around March 2021, Sequium began reporting the Debt monthly to Equifax. **SEE PLAINTIFF'S EXHIBIT C.**

42. When Charter assigned the debt to Sequium, Charter knew or should have known that the Debt was disputed by Mr. Fair and was thus required to disclose its disputed status to Sequium.

43. Sequium rounded the debt to $972 and reported the balance as being owed to the original creditor Charter.

44. The Sequium tradeline, however, failed to disclose that the Debt was disputed. *Id.*

45. Amsher also continued reporting the Debt to Equifax – *simultaneous* to Sequium's reporting.

46. As a result, the same debt appeared – and continues to appear – as two separate, distinct tradelines in reports produced by Equifax concerning Mr. Fair, leading anyone viewing Mr. Fair's credit report to falsely conclude that he owed two different debts to Charter, totaling $1,943.

47. The inclusion of the duplicate tradelines on Mr. Fair's credit reports caused significant harm to his credit scores, as the number of collection accounts on a consumer's report severely, and adversely, affects the consumer's scores.

48. Thus, Sequium's reports of the Debt not only caused the Debt to appear on Mr. Fair's Equifax credit report twice, but in Sequium's iteration, it reported as a "non-disputed" debt.

49. Sequium is a large debt collector and receives a considerable number of disputes concerning debts it reports to CRAs. Sequium knew, when it received a portfolio of charged-off debts for collection from Charter in January 2021, which included Mr. Fair's purported Debt, that it was not the first collection agency to be assigned the accounts.

50. Sequium thus knew – or reasonably should have known – a considerable number of the accounts had been previously disputed and had to be reported as such. Sequium had no policies in place to so much as even *ask* creditors like Charter who place debts for collection with it if the creditor was aware of any prior disputes by the relevant consumers.

51. Assuming, *arguendo*, that Charter failed to disclose to Sequium that the Debt was disputed, reliance on an original creditor's erroneous records is not a defense to an FDCPA action. *See Owen* v. *I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011) (holding that debt collectors remain liable even when violations are not knowing or intentional).

52. The duplicate tradelines continue to appear in reports sold by Equifax regarding Mr. Fair, despite the obvious overlap in the reported information.

53. Indeed, in May 2021 and June 2021, Mr. Fair applied for a credit card account through Capital One Bank USA, N.A. ("**Capital One**"). **SEE PLAINTIFF'S EXHIBIT D.**

54. Capital One requested and obtained a copy of Mr. Fair's Equifax consumer credit report.

55. In each of these consumer reports, Equifax included both the Amsher and Sequium tradelines, both falsely indicating the Debt.

56. The duplicate tradelines included in Mr. Fair's credit reports caused unjust harm to Mr. Fair's credit scores and negatively affected his ability to obtain a line of credit.

57. Amsher and Sequium's false reporting has also caused Mr. Fair to suffer embarrassment, damage to reputation, and emotional distress from being denied credit and having to dispute the false accounts on his credit report.

58. At all times relevant, Amsher and Sequium were acting on behalf of Charter and within the scope of their authority.

59. Charter, as principal, is liable for the actions of its agents, Amsher and Sequium.

60. Mr. Fair has hired the undersigned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

## COUNT I
## VIOLATIONS OF THE FCRA - *Amsher*

61.  Mr. Fair incorporates paragraphs 1 – 60 as if fully stated herein

62.  Amsher violated **15 U.S.C. § 1681s-2(b)** when it failed to conduct a reasonable investigation, upon receiving notice of a dispute by Mr. Fair from Experian in September 2020. Had Amsher conducted a reasonable investigation, it would have determined, at the minimum, its reporting required updating or modification to indicate the Debt was disputed by Mr. Fair.

63.  Amsher's conduct was willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to reasonably investigate consumer disputes, and its policies could reasonably be foreseen to cause harm to Mr. Fair.

**WHEREFORE,** Mr. Fair respectfully requests this Honorable Court enter judgment against Amsher for:

a.  The greater of statutory damages of **$1,000** per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1) or Mr. Fair's actual damages for loss of credit opportunities and related economic and non-economic injuries;

b.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3); and,

c.  Such other relief that this Court deems just and proper.

## COUNT II
## <u>VIOLATIONS OF THE FDCPA</u> – *Amsher*

64. Mr. Fair adopts and incorporates paragraphs 1 – 60 as if fully stated herein.

65. Amsher violated **15 U.S.C. §§ 1692e and 1692e(10)** when it made a false representation in an attempt to collect a debt by: (a) reporting a duplicate tradeline to the CRAs, reporting the Debt to Equifax after the Debt had also been assigned to Sequium, thereby making it appear that Mr. Fair was responsible for *two* debts instead of one; and, (b) reporting the Debt to Experian in October 2020 without notice of dispute, despite being aware that the Debt was disputed since at least September 2020.

66. Amsher violated **15 U.S.C. § 1692e(2)(a)** when it made false representations about the character and amount of a debt by: (a) reporting a duplicate tradeline to the CRAs, reporting the Debt to Equifax after the Debt had also been assigned to Sequium, thereby making it appear that Mr. Fair was responsible for two debts instead of one; and, (b) reporting the Debt to Experian in October 2020 without notice of dispute, despite being aware the Debt was disputed since at least September 2020.

67. Amsher violated **15 U.S.C. § 1692e(8)** when it communicated credit information which it knew or should have known to be false by continuing to report a duplicate tradeline to the CRAs.

68. Amsher violated **15 U.S.C. § 1692e(8)** when it communicated credit information which it knew or should have known to be disputed without disclosure of dispute in its October 2020 report to Experian.

69. Amsher violated **15 U.S.C. § 1692f** when it used unfair or unconscionable means to attempt to collect a debt by continuing to report a duplicate tradeline to the CRAs, thereby making it appear that Mr. Fair was responsible for *two* debts instead of one and unfairly affecting Mr. Fair's credit scores, and when it reported a disputed debt without disclosure of dispute.

70. Amsher's actions render it liable for the above-stated violations of the FDCPA, and Mr. Fair is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

**WHEREFORE,** Mr. Fair respectfully requests this Honorable Court enter judgment against Amsher and Charter, jointly and severally, for:

    a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    b.    Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

    c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

    d.    Such other relief that this Court deems just and proper.

## COUNT III
## VIOLATIONS OF THE FDCPA – *Sequium*

71.  Mr. Fair adopts and incorporates paragraphs 1 – 60 as if fully stated herein.

72.  Sequium violated **15 U.S.C. § 1692e and 1692e(10)** when it made false and/or misleading representations in an attempt to collect a debt, when it reported the Debt to Equifax, despite the same account being reported simultaneously by Amsher, and by failing to disclose that the Debt was disputed.

73.  Sequium violated **15 U.S.C. § 1692e(2)(a)** when it made false and misleading representations about the character, amount, and legal status of a debt by reporting the Debt to Equifax, despite the same account being reported simultaneously by Amsher, and by failing to disclose that the Debt was disputed.

74.  Sequium violated **15 U.S.C. § 1692e(8)** when it communicated credit information which it knew or should have known was false, by reporting the Debt to Equifax, and by failing to disclose that the Debt was disputed.

75.  Sequium's actions render it liable for the above-stated violations of the FDCPA, and Mr. Fair is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

**WHEREFORE,** Mr. Fair respectfully requests this Honorable Court enter judgment against Sequium for:

   a.  Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. §1692k(a)(2)(A);

    b.    Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

    c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

    d.    Such other relief that this Court deems just and proper.

## COUNT IV
## VIOLATION OF THE FCCPA - *Charter*

76. Mr. Fair adopts and incorporates paragraphs 1 –60 as if fully stated herein.

77. Charter violated **Section 559.72(9), Florida Statutes**, when it asserted a debt was legitimate when it knew it was not. By placing the Debt for collection concurrently with Amsher and Sequium, Charter was asserting *two* debts of $971 were owed, when Charter knew this was false.

78. Charter's actions were engaged in intentionally or with reckless disregard for the rights of consumer like Mr. Fair.

79. By its conduct, Charter is liable for the above-stated violations of the FCCPA, rendering them liable under the statute for damages, costs, and fees.

**WHEREFORE,** Mr. Fair respectfully requests this Honorable Court enter judgment against Charter for:

    a.    Statutory damages of **$1,000.00** pursuant to Section 559.77(2), Florida Statutes;

    b.    Actual damages, pursuant to Section 559.77(2), Florida Statutes;

    c.    Reasonable costs and attorneys' fees pursuant to Section 559.77(2), Florida Statutes; and,

    d.    Such other relief that this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted on **July 30, 2021**, by:

**SERAPH LEGAL, P.A.**

*/s/ Brandon D. Morgan*
Brandon D. Morgan, Esq.
Florida Bar Number: 1015954
bmorgan@seraphlegal.com

*/s/ Thomas M. Bonan*
Thomas M. Bonan, Esq.
Florida Bar Number: 118103
tbonan@seraphlegal.com

1614 N 19th Street
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Attorneys for Plaintiff*

**EXHIBIT LIST**
A. Plaintiff's Equifax Consumer Disclosure, December 23, 2020, Amsher Account – Excerpt
B. Plaintiff's Experian Consumer Disclosure, October 23, 2020, Amsher Account – Excerpt
C. Plaintiff's Equifax Consumer Disclosure, June 5, 2021, Duplicate Tradelines - Excerpt
D. Plaintiff's Equifax Consumer Disclosure June 5, 2021, Inquiries - Excerpt